# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00033-CR

---

### Ex parte Todd T. Bornhop

---

### FROM THE 450TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-21-100116, THE HONORABLE LEON J. GRIZZARD, JUDGE PRESIDING

---

### O P I N I O N

Appellant Todd Bornhop appeals the trial court's denial of his pretrial application for writ of habeas corpus challenging his pending extradition to Missouri. In a single issue, Bornhop contends that he is unlawfully restrained because the documents supporting the Governor's Warrant[1] are "insufficient on their face" in violation of article 51.13, section 3, of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 51.13, § 3. We will affirm the trial court's order.

### BACKGROUND

Bornhop was charged by complaint with two counts of burglary and three counts of stealing, alleged to have been committed in Missouri in violation of that state's laws, and a Missouri court issued a warrant for his arrest. He was subsequently arrested in Austin, Texas

---

[1] While Bornhop challenges the "documents supporting the Governor's Warrant," section 3 refers instead to those accompanying the "demand for . . . extradition." *See* Tex. Code Crim. Proc. art. 51.13, § 3. Liberally construing Bornhop's briefing, we understand his claim to refer to the "supporting documents" referenced in the Missouri governor's requisition demand.

and jailed. *See* Mo. Ann. State. §§ 569.160, .170, 570.030. In response to a requisition demand from the Missouri governor, the Texas governor issued a governor's warrant ordering Bornhop's extradition to Missouri. *See* Tex. Code Crim. Proc. art. 51.13, § 7 (if governor decides extradition demand made by executive authority of another state should be complied with, he shall sign warrant of arrest).

Bornhop filed an application for writ of habeas corpus with the trial court, challenging the sufficiency of the documents accompanying the requisition demand. Following a hearing, the trial court denied Bornhop's application and entered findings of fact and conclusions of law. This appeal followed.

## DISCUSSION

Bornhop contends that none of the documents listed in article 51.13, section 3, accompanied the Missouri governor's requisition demand and that, consequently, the extradition documents are not in order on their face. Specifically, Bornhop maintains that neither the complaint nor probable-cause statements constitute affidavits made before a magistrate.[2] He argues that this alleged deficiency overcomes the presumption of regularity afforded such documents.[3]

---

[2] The parties agree that the requisition demand was not accompanied by an indictment and that the central question is the presence of an "affidavit before a magistrate." During the hearing, the State explained that "an indictment found . . . is not the factor that's at issue here and that the "one that's at issue is ['] by a copy of an affidavit before a magistrate there together with a copy of any warrant which issued thereupon.[']" *Cf.* Tex. Code Crim. Proc. art. 51.13, §3.

[3] Bornhop, "[f]or the sake of brevity" and to preserve our judicial resources, attempts to adopt and incorporate into his brief "all arguments" raised in his filings with the habeas court, as well as "all oral arguments presented" in the six-volume Reporter's Record. Arguments not raised in his 10-page appellate brief, however, are inadequately briefed and will not be considered for purposes of this appeal. *See* Tex. R. App. P. 38.1(i) (requiring brief to contain "a

The Extradition Clause of the United States Constitution provides:

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

U.S. Const., Art. IV, § 2, cl. 2. Interstate extradition proceedings are intended to be "summary" and "mandatory." *Michigan v. Doran*, 439 U.S. 282, 288 (1978). "The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial." *Id.* To the contrary, because proceedings in the demanding state are "clothed with the traditional presumption of regularity," courts of the asylum state "are bound to accept the demanding state's judicial determination." *Id.* at 290. "To allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Art. IV, § 2." *Id.*

Texas has adopted the Uniform Criminal Extradition Act ("UCEA"), codified in article 51.13 of the Code of Criminal Procedure, which "acknowledges the duty of the governor, within the parameters of the act and the federal constitution, to cause a fugitive to be arrested and delivered up to the executive authority of the demanding state." *Ex parte Lebron*, 937 S.W.2d 590, 592 (Tex. App.—San Antonio 1996, pet. ref'd, untimely filed); *see* Tex. Code Crim. Proc. art. 51.13, § 2. The UCEA "sets forth the minimum procedural requirements placed upon the

---

clear and concise argument for the contentions made"); *A.H.D. Houston, Inc. v. City of Houston*, 316 S.W.3d 212, 220 n.6 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("All arguments must be in the briefs; incorporating by reference arguments made in another document does not present an issue for appellate review."); *Young v. Neatherlin*, 102 S.W.3d 415, 423 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[T]he Rules of Appellate Procedure plainly require the issues and pertinent facts to be set forth in the brief itself.").

demanding state and the asylum state and grants considerable discretion to the governor of the asylum state to determine whether the fugitive ought to be surrendered." *Lebron*, 937 S.W.2d at 592.

A governor's grant of extradition is "prima facie evidence that the constitutional and statutory requirements have been met." *Doran*, 439 U.S. at 289; *see State ex rel. Holmes v. Klevenhagen*, 819 S.W.2d 539, 542 (Tex. Crim. App. 1991). Once the governor grants extradition, "the accused's sole avenue for relief . . . is through a writ of habeas corpus." *Lebron*, 937 S.W.2d at 593. The court considering the habeas application is limited to deciding: "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Doran*, 439 U.S. at 289. A habeas court "'can do no more' than decide [these] four specific issues in the extradition context." *Ex parte Potter*, 21 S.W.3d 290, 294 (Tex. Crim. App. 2000) (quoting *Doran*, 439 U.S. at 288–89).

We review the habeas court's decision for an abuse of discretion, view the record in the light most favorable to the court's ruling, and give almost complete deference to the court's determination of historical facts supported by the record. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Rhodes*, 494 S.W.3d 752, 755 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see also Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (explaining that trial court abuses its discretion when its ruling is "arbitrary," "unreasonable," or made "without reference to any guiding rules and principles"). The trial court's ruling may be affirmed if "it is correct on any applicable theory of law—even if that theory was not presented to the trial court." *Ex parte Sanders*, --- S.W.3d ---,

No. PD-0469-19, 2022 WL 1021055, at *2 (Tex. Crim. App. Apr. 6, 2022) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

Article 51.13, section 3, provides:

> No demand for the extradition of a person charged with crime in another State shall be recognized by the Governor unless . . . accompanied by a copy of an indictment found or by information supported by affidavit in the State having jurisdiction of the crime, or by a copy of an affidavit before a magistrate there, together with a copy of any warrant which issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the Executive Authority of the demanding State that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole.

Tex. Code Crim. Proc. art. 51.13, § 3. The required supporting documents list is "disjunctive," and "it is not necessary all the instruments listed . . . accompany the demand for extradition." *Ex parte Mason*, 656 S.W.2d 470, 471 (Tex. Crim. App. 1983). Rather, the requirements of section 3 are satisfied "if at least one of the listed instruments accompanies the extradition demand." *Ex parte Zetty*, 765 S.W.2d 908, 909 (Tex. App.—Austin 1989, no pet.) (citing *Noe v. State*, 654 S.W.2d 701, 702 (Tex. Crim. App. 1983)). If, however, the supporting documents do not meet section 3's requirements, "the rendition warrant should not issue and the applicant shall be entitled to his discharge." *Ex parte Sanchez*, 642 S.W.2d 809, 811 (Tex. Crim. App. 1982).

Accompanying the Missouri governor's requisition demand in this case are certified copies of a felony complaint, signed by a prosecuting attorney, charging Bornhop with two counts of burglary and three counts of stealing; two probable cause statements signed by a detective under penalty of perjury; and the warrant for Bornhop's arrest.

The habeas court made the following relevant findings of fact and conclusions of law:

**FINDINGS OF FACT**

. . . .

14.   This Court finds that the Governor's Warrant and its associated paperwork comply with the requirements of Article 51.13 of the Texas Code of Criminal Procedure and was endorsed by the Governor of Texas on October 26, 2021.

. . . .

17.   The complaint is accompanied by the two statement of facts documents referenced in the complaint, which are each entitled "Probable Cause Statement Form" (Report Nos. 18-10227, 18-10281). *Id.* at 13-14. These probable cause statement forms set out the facts establishing probable cause for the charged offenses. *Id.* Detective Omar Ruiz signed the probable cause statement forms, declaring the following: "knowing that false statements on this form are punishable by law, state that the facts contained herein are true." *Id.* at 13-14.

. . . .

20.   This Court finds that the Missouri officer made his statements under penalty of law and the above-described paperwork qualifies as a sworn statement before a magistrate, who is an officer authorized to administer oaths. *See* Tex. Gov't Code § 312.011.

21.   This court finds that the Governor's Warrant is regular on its face, contains authenticated documents from the demanding state, and includes an affidavit of identification signed by Detective Omar Ruiz and a photograph of Applicant. As such, the Governor's Warrant constitutes prima facie evidence that Applicant is the subject of the warrant and a fugitive.

6

. . . .

23.   This court finds that Applicant offered argument, but no evidence, and did not substantively challenge his identity as the subject of the warrant.

24.   This court finds that Applicant is the subject of the Governor's Warrant and is the person charged in the Jefferson County, Missouri with multiple felonies in the felony complaint attached to the warrant. The Court finds that Applicant is a fugitive.

. . . .

## CONCLUSIONS OF LAW

5.    The Government Code defines "Affidavit" as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." Tex. Gov't Code § 312.011.

. . . .

12.   I find that the complaint, accompanying statements of probable cause, and warrant with the associated judicial signatures in this case appear to comply with the applicable Missouri laws. In light of the presumption of regularity accorded the documents, the governor's warrant and its paperwork satisfy the requirements of Tex. Code Crim. Proc. art. 51.13 § 3.

13.   The State has established its prima facie case and Applicant has not demonstrated that he is not the person charged in the demanding state.

Article 51.13 does not define "affidavit." *See* Tex. Code Crim. Proc. art. 51.13. Although the trial court used the definition found in the Texas Government Code, *see* Tex. Gov't Code § 312.011(1), that provision "pertains to the construction of civil statutes," and we need not apply it when interpreting Article 51.13, section 3, *See Smith v. State*, 207 S.W.3d 787, 791 n.18

7

(Tex. Crim. App. 2006); Tex. Gov't Code § 312.001 (providing that the Code's definitions apply "to the construction of all civil statutes"). The Code of Criminal Procedure, to the contrary, instructs that all undefined words, phrases, and terms are "to be taken and understood in their usual acceptation in common language." Tex. Code Crim Proc. art. 3.01; *see Avery v. State*, 359 S.W.3d 230, 237 (Tex. Crim. App. 2012) (observing that words not defined by statute "are used in their ordinary and common sense").

Black's Law Dictionary[4] defines "affidavit" as "[a] voluntary declaration of facts written down and sworn to by a declarant, usu[ally] before an officer authorized to administer oaths." *Affidavit*, Black's Law Dictionary (11th ed. 2019). The Merriam-Webster Legal Dictionary similarly defines an affidavit as "a sworn statement in writing made especially under oath or on affirmation before an authorized magistrate or officer." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/affidavit#legalDictionary (last visited August 8, 2022). Likewise, Collins Dictionary defines the term as "a written statement which you swear is true and which may be used as evidence in a court of law." Collins Dictionary, https://www.collinsdictionary.com/dictionary/english/affidavit (last visited August 8, 2022).

These definitions suggest that Subsection 312.011(1)'s requirement that the affidavit be certified by the authorizing officer under his seal of office does not extend to Article 51.13, section 3. And indeed, Texas courts have found that such a seal is unnecessary with respect to an affidavit supporting a requisition demand. *See Ex parte Renfro*, 350 S.W.2d 655, 656–57 (Tex. Crim. App. 1961) (concluding that it was "not essential that the complaint or affidavit sworn to before the Justice of the Peace bear a seal"); *Ex parte Palomo*,

---

[4] *See Watkins v. State*, 619 S.W.3d 265, 272–73 (Tex. Crim. App. 2021) ("We may consult standard or legal dictionaries in determining the fair, objective meaning of undefined statutory terms, and legal dictionaries to determine the meaning of undefined legal terms.").

No. 01-90-00536-CR, 1990 WL 151202, at *1 (Tex. App.—Houston [1st Dist.] Sept. 20, 1990, pet. denied) (court was "aware of no requirement" that jurat on affidavit have court stamp or seal affixed to it, as "Article 51.13, section 3 requires an 'affidavit before a magistrate'").

Here, Detective Ruiz's probable cause statements were made under penalty of perjury and provide that he, "knowing that false statements on this form are punishable by law," "state[s] that the facts contained herein are true."[5] The statements are signed by an associate circuit judge above the stamped notation "Judge's Signature" and next to the text, "For the purpose of extradition, I find probable cause." We agree with the trial court that the probable cause statements constitute affidavits before a magistrate for purposes of article 51.13, section 3. The documents supporting the Missouri governor's requisition demand also include a copy of a Complaint in Felony and Request for Warrant, incorporating the probable cause statements by reference, and the resultant arrest warrant, as required by Article 51.13, section 3. We therefore

---

[5] Ruiz's statements were plainly sworn to under oath, as those terms are understood in common usage. Black's Law Dictionary defines "swear" in relevant part as "[t]o take an oath." *Swear*, Black's Law Dictionary (11th ed. 2019). "Oath," in turn, is defined as:

> A solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound to a promise. The person making the oath implicitly invites punishment if the statement is untrue or the promise is broken. The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false. 2. The statement or promise made in such a declaration. 3. The form of words used for such a declaration. 4. A formal declaration made solemn without a swearing to God or a revered person or thing.

*Oath*, Black's Law Dictionary (11th ed. 2019). The Merriam-Webster Legal Dictionary defines "swear" in part as "to utter or take solemnly" or "to assert as true or promise under oath." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/swear#legalDictionary (last visited August 8, 2022). It defines "oath" as "a solemn attestation of the truth of one's words or the sincerity of one's intentions" and "under oath" as "under a solemn and especially legal obligation to tell the truth (as when testifying)." *Id.* at https://www.merriam-webster.com/dictionary/oath (last visited August 8, 2022).

conclude that the trial court did not abuse its discretion by denying Bornhop's pretrial application for writ of habeas corpus and overrule his sole issue on appeal.

## CONCLUSION

Having overruled Bornhop's issue, we affirm the trial court's order.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   August 11, 2022

Publish

10